UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **UNITED STATES,** | ) ) ) | |
| Plaintiff, | ) ) ) | **CRIMINAL ACTION** **NO. 17-40044-TSH** |
| v. | ) ) ) ) ) | |
| **ADAM GERMANO,** | ) ) ) | |
| Defendant. | ) ) | |

## ORDER ON DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE
### (Docket No. 215)

**May 10, 2021**

**HILLMAN, D.J.,**

Pursuant to a plea agreement, on October 5, 2018, Adam Germano ("Mr. Germano" or "Defendant") pled guilty to 1 count of conspiracy to distribute and to possess with intent to distribute methamphetamine and 2 counts of distribution and possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 846 & 841(a)(1). On February 14, 2019, I sentenced Mr. Germano to 180 months of imprisonment followed by 5 years of supervised release. He is serving his sentence at FCI Ft. Dix, where his projected release date is January 10, 2030. Mr. Germano filed a Motion for Compassionate Release pursuant to 18 U.S.C. § 3582 through his court appointed counsel on March 24, 2021, asking that his sentence be reduced to time served or that he be resentenced to home confinement due to the risk posed by the COVID-19 pandemic. (Docket No. 114).

After hearing and for the reasons set forth below, the motion is **_denied without prejudice_** to renew upon a change in circumstances at FCI Ft. Dix, a change in Mr. Germano's health or circumstances, or as new medical information about COVID-19 or COVID-19 vaccines becomes available.

## Discussion

Section 3582(c) begins with the general principle that "a court may not modify a term of imprisonment once it has been imposed . . ." Upon motion of the Director of the Bureau of Prisons ("BOP") or a defendant, however, a court "may reduce the term of imprisonment (and may impose a term of probation and supervised release with or without conditions that does not exceed the unserved portion of the original terms of imprisonment), after considering the factors set forth in § 3553(a) to the extent that they are applicable,[1] if it finds that ". . . extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A).

Although the Commission has not released an updated policy statement addressing when compelling and extraordinary reasons exist for sentence reduction in the context of the COVID-19 pandemic, federal courts have used its most recent November 2018 policy statement as guidance. Under that guidance as it pertains to a defendant's medical condition, compelling and extraordinary circumstances exist when the defendant is suffering from a terminal illness or is:

---

[1] The § 3553(a) factors include: (1) the need for the sentence imposed to, among other factors, reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to afford adequate deterrence to criminal conduct; (2) the kinds of sentences available; (3) the kinds of sentences and the sentencing range established by the applicable category of offense and defendant; (4) any pertinent policy statement guidelines issued by the Sentencing Commission; (5) the need to avoid unwarranted sentence disparities among defendants with similar record who have been found guilty of similar conduct; and (6) the need to provide restitution to any victims of the offense.

"(I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13.

Upon consideration of the current state of the COVID-19 pandemic, including the circumstances at FCI Ft. Dix, along with an assessment of the relevant factors specific to the Defendant, I find that Mr. Germano has not met the burden necessary to secure a compassionate release. The relevant factors include: (1) the seriousness of the defendant's medical condition; (2) the health, safety, and living conditions at the facility where the defendant is housed; and (3) the crime of conviction and length of the remaining sentence.

As a preliminary issue, this Court has authority to review the motion for compassionate release because Mr. Germano has exhausted his administrative remedies. (*See* Inmate Request to Staff Response, Docket No. 114-2 at 2).

Conditions at FCI Ft. Dix, which was the site of the largest COVID-19 outbreak in the federal prison system in early 2021, have substantially improved in recent months. As of May 10, 2021, the BOP reports that there are 2 inmate cases and 2 staff COVID-19 cases at FCI Ft. Dix, out of a total inmate population of 2,822. FEDERAL BUREAU OF PRISONS: COVID-19 CORONAVIRUS, https://www.bop.gov/coronavirus/ (last visited May 10, 2021). 247 staff members and 1480 inmates are fully vaccinated, or approximately 52% of the inmate population. *Id*. 1798 inmates and 91 staff members have recovered from COVID-19; two inmates have died. *Id.*

Mr. Germano paints a less rosy picture of conditions at FCI Ft. Dix. He is housed in a building with 300 men, has been assigned to a room with twelve men sleeping in six bunk beds that is too small to allow social distancing, and is unable to properly social distance in other common spaces such as the TV Room or cafeteria. (Germano Aff. ¶¶ 15-16, Docket No. 114-3). He also believes that the BOP is underreporting COVID-19 cases because 205 of the 300 men in his building are sick, a number which is plainly at odds with the three cases reported at FCI Ft. Dix when Mr. Germano wrote his affidavit and this motion was filed on March 23-24, 2021. (¶ 20). He adds that no hand sanitizer or antibacterial is available, uninfected inmates are served food by COVID-positive inmates, the correctional officers rarely don masks or PPE, and that the same air circulates between housing units with uninfected and infected inmates. (¶¶ 11-14, 21).

Mr. Germano states that despite the low number of reported cases at FCI Ft. Dix, he should be released because his medical conditions put him at an increased risk of severe complications from COVID-19. He is 39 years old, obese, has high cholesterol, and smoked two packs of cigarettes a day from the age of 15 until his arrest at 35. (Docket No. 114 at 10). He has been proscribed medication to control his cholesterol. (Docket No. 115 at 167). If released, he would reside with a friend and expects to obtain employment at a roofing company. (Docket No. 114 at 19).

I find that Mr. Germano's medical conditions put him at an increased risk of severe illness should he contract COVID-19. According to the CDC, obesity is linked to impaired immune function and reduced lung capacity, sharply increases an individual's risk of severe COVID-19 illness, and may triple the risk of hospitalization due to COVID-19. CDC, OBESITY, RACE/ETHNICITY, AND COVID-19, https://www.cdc.gov/obesity/data/obesity-and-covid-19.html (last visited May 5, 2021). However, many courts have found that obesity alone does not justify

granting a motion for compassion release. *United States v. Porter*, 2020 LEXIS 236473 at *10-12 (C.D. Ill. Dec. 16, 2020) (denying defendant's motion for compassionate release despite obesity and mild asthma); *United States v. Acevedo*, 2021 LEXIS 12755 at *3 (D. Mass. Jan. 25, 2021) (distinguishing between mild and moderate to severe asthma and denying defendant's motion for compassionate release despite their obesity); *United States v. Reynoso*, 2021 LEXIS 47833 *3-4 (D. Mass. Mar. 12, 2021) (holding that obesity accompanied with other medical conditions did not constitute extraordinary circumstances for purposes of compassionate release where petitioner was 29 years old and had not shown his health conditions substantially diminished his ability to care for himself). Former smokers may also be at an increased risk for severe COVID-19. *Id*. The CDC does not recognize high cholesterol as a condition that exacerbates COVID-19 risks.

Mr. Germano declined the Pfizer COVID-19 vaccine on January 21, 2021. According to a signed consent form produced with Mr. Germano's BOP medical records, the BOP nurse who offered him the vaccine also provided Mr. Germano with a copy of the COVID-19 Emergency Use Authorization fact sheet and an opportunity to ask questions about the vaccine's risks and benefits. (Docket No. 115 at 115, 164, 178, 183, 199-200). The United States disregards Mr. Germano's refusal as a "strategic maneuver" based on the theory that this Court is more likely to release an unvaccinated defendant than a vaccinated one. According to his attorney, Mr. Germano declined to be inoculated because he does not trust the BOP and many of the inmates at FCI Ft. Dix who took the vaccine later tested positive for the virus. (Germano Aff. ¶ 23, Docket No. 144-3). Given the conditions that Mr. Germano describes at FCI Ft. Dix and the wide reports of vaccine skepticism among BOP inmates and staff, the Court will not credit the Government's speculation about Mr. Germano's motives. *See* Becky Sullivan, *All Federal*

*Inmates to be Offered Vaccine by Mid-May, BOP Director Says*, NPR News, https://www.npr.org/2021/04/16/988237102/all-federal-inmates-to-be-offered-vaccine-by-mid-may-bop-director-says (Apr.16, 2021) (reporting BOP Director Carvajal's Congressional testimony that 66% of BOP inmates and 49% of correctional officers have chosen not to be inoculated). Nonetheless, Mr. Germano's decision not to take advantage of a vaccine that is at least 90% effective at preventing COVID-19 or death or hospitalization from COVID-19 undercuts his argument that COVID-19 is a serious threat to his health which justifies his immediate release,[2] especially as he has not provided any medical basis for refusal.[3] New information about vaccine efficacy in prison settings, the need for a secondary "booster" vaccine, or vaccine-resistant COVID-19 variants could emerge in the future, but there is no question now that the vaccine could have dramatically reduced Mr. Germano's risk of contracting COVID-19 or experiencing a severe course of illness if he contracts the virus.

Even if I found that Mr. Germano's health and the COVID-19 pandemic constituted compelling and extraordinary circumstances, the nature of Mr. Germano's offense and the length

---

[2] CDC research indicates that the Moderna and Pfizer vaccines are more than 90% effective at preventing infection fourteen days after the second dose is administered. CDC, INTERIM ESTIMATES OF VACCINE EFFECTIVENESS IN PREVENTION INFECTION AMONG HEALTH CARE PERSONNEL, FIRST RESPONDERS, AND OTHER ESSENTIAL AND FRONTLINE WORKERS, available at https://bit.ly/3tLXuQM (published on Apr. 2, 2021).

[3] A growing number of courts have rejected compassionate release motions predicated on COVID-19 from petitioners who have refused to be vaccinated without some medical reason. *United States v. Bautista*, 2021 LEXIS 66405 at *12 (E.D. Pa. Apr. 6, 2021) ("denial of the COVID-19 vaccine further weighs against finding an extraordinary and compelling reason for release"); *United States v. Pruitt*, 2021 LEXIS 63742 at *6 (N.D. Tex. Apr. 1, 2021) (agreeing with Government that defendant may not refuse the vaccine and validly argue for compassionate release); *United States v. Jackson*, 2021 LEXIS 39807 at *4 (D. Minn. Mar. 3, 2021) ("While he is within his rights to refuse any treatment he wishes to forego, he cannot simultaneously claim that he must be released because of the risk of complications while refusing a vaccine that could virtually eliminate that risk").

of his remaining sentence also weigh against Mr. Germano's release.⁴  Mr. Germano has only served approximately 49 months of his 180-month sentence and is scheduled to be released on January 10, 2030.  He admitted to travelling to Texas and Nevada in order to acquire and using the U.S. Postal Service to ship at least 5 pounds of methamphetamine to Massachusetts, New Hampshire, and Florida.  Plea Agmt., Docket No. 100 at 11-12.  At a traffic stop and then at his subsequent arrest in March 2017, police found him carrying methamphetamine, a handgun, and a knife.  *Id*. at 12.  Police also recovered a second handgun in a hotel room linked to Mr. Germano. (Docket No. 120-2).

The Government also posits that two conversations on Facebook's message application evince Mr. Germano's "willingness to use violence or threats of violence" to further his illegal ends, but the Court is not convinced.  (Docket No. 120-4).  The first conversation, messages exchanged between Germano and his co-conspirator Brian Zukowski on October 9, 2016 regarding a third party who allegedly owed Zukowski $9,500, does contain threats of violence, but they are chiefly instigated by Zukowski, not Germano.  (*Id*. at 1-3).  Germano offered to "zip tie" the third party, but Zukowski's threats were more overt: "i am comming to kick the shit out of him" and "He's done whern I get my hands on him."  (*Id*. at 2-3).  In the second conversation, Germano tells a redacted third party who admitted to accidentally taking his glasses that "people have disappeared from stealing from me" but signs off with a friendly "I'm going to bed" and frowning emoticon—hardly the hallmarks of a violent threat.  (*Id.* at 4).

---

⁴ The Court acknowledges that the Government withdrew its objection that Mr. Germano's compassionate release motion violated the provision in his plea agreement to accept his underlying sentence as final. I have not considered that argument or the misstatement in the Government's opposition that Mr. Germano lied to a grand jury. (Docket No. 123).

Mr. Germano adds that courts in this District have granted compassionate release to defendants who refused to be vaccinated or were not vaccinated—the Court is aware of three—occasions. See *United States v. Murakami*, 17-cr-10346-DPW, Docket Nos. 79, 80 (D. Mass. 2021); *United States v. Bradshaw*, Case No. 96-cr-10032-DPW, Docket Nos. 791, 802, 803 (D. Mass. 2021); *United States v. Meuse*, 19-10337-MLW (D. Mass. 2021). The Defendants in each of these cases can be distinguished from Mr. Germano. Mr. Murakami had served more than half his sentence and was housed at a facility with 33 inmate and 24 staff confirmed COVID-19 cases, whereas Mr. Germano has served less than a third of his sentence and is at a facility reporting lower number of COVID-19 cases. (Docket Nos. 79, 80). Mr. Bradshaw had also served more than half his sentence and was twenty years older than Mr. Germano.[5] (Docket Nos. 791, 803-03). Like Mr. Germano, Mr. Meuse was also obese, but the prison where he was incarcerated had no plans to vaccinate staff or inmates when the motion was heard in February 2021; Judge Wolf also based that decision in large part because Mr. Meuse had served a sentence that was "decades longer" than the reduced mandatory minimums provided for under current law in the First Step Act—no such sentencing disparity applies to Mr. Germano. (Hg. Transcript, Docket No. 941 at 60-63).

Given the length of his remaining sentence, the nature of his offense, and his refusal to be vaccinated, Mr. Germano has failed to demonstrate the necessary compelling and extraordinary

---

[5] Per the CDC, the risk for severe illness with COVID-19 increases with age, with older adults at highest risk: "8 out of 10 COVID-19 deaths reported in the U.S. have been in adults 65 years old and older." Whereas an adult Mr. Bradshaw's age is 25 times more likely to be hospitalized and 440 times more likely to die from COVID-19 compared to a person between the ages of 5 and 17, an adult Mr. Garcia's age is 10 time more likely to be hospitalized and 45 times more likely to die compared to a person from the same reference group. *See* CDC, OLDER ADULTS, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited May 7, 2021).

circumstances to justify his early release even when I account for his increased risk of severe COVID-19 due to his weight and prior tobacco use.  The motion is ***denied without prejudice***. Mr. Germano may renew his motion upon a change in circumstances at USP Lewisburg, a change in his health or circumstances, or as new medical information about COVID-19 and asthma become available.

**SO ORDERED.**

*/s/ Timothy S. Hillman*
**Timothy S. Hillman**
**District Judge**